IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 19-354 |
| HAFIZ ANTONIO MYRICK | : | |
| | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                           **MARCH 2, 2023**

Presently before the Court is Defendant Hafiz Antonio Myrick's Second Supplemental Objection To Application Of The ACCA Enhancement. (ECF No. 56.) Defendant's Objection will be sustained.

**I.      BACKGROUND**

Defendant Hafiz Antonio Myrick entered a plea of guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Defendant now objects to the application of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), to his sentencing, which would require a minimum sentence of fifteen years. Specifically, he argues that the Pennsylvania law under which he sustained his prior convictions, 35 Pa. Cons. Stat. § 780-113(a)(30), is broader than its federal counterpart, the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq*. The Court agrees and will sustain his objection.

**II.     LEGAL STANDARD**

The ACCA imposes a fifteen-year mandatory minimum sentence on a person who violates 18 U.S.C. § 922(g) and has at least three prior state or federal convictions for violent felonies or serious drug offenses that were committed on different occasions. 18 U.S.C. §

924(e)(1). A "serious drug offense" is defined under the CSA as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

In the Third Circuit, courts use the categorical approach to determine if state drug offenses qualify as predicate serious drug offenses under the ACCA. Under this approach "a state crime may not qualify as a 'serious drug offense'—and thus may not serve as an ACCA predicate—if its elements are different from or broader than the generic [federal] version of that offense." *United States v. Brown,* 47 F.4th 147, 149 (3d Cir. 2022). In other words, if a court concludes that "the state law governing a particular offense criminalizes more conduct than its generic federal counterpart, then a state conviction for that offense may not count toward the ACCA's requirement of three prior offenses." *Id.*

The categorical approach requires courts to "look solely at the elements of the compared crimes and ignore the particular facts of the case." *Id.* at 149-50. If the elements of the statutes are not facially different, and it would take "legal imagination" to find a difference in their application, only then must the defendant show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). *See United States v. Bakersville,* No. 19-33, 2022 WL 4536126 (M.D. Pa. Sept. 28, 2022) ("resorting to the realistic probability analysis is only necessary when 'legal imagination' is required to perceive a difference between the state and federal statutes."). On the other hand, if state law criminalizes broader conduct on its face, then this ends the inquiry, a realistic probability inquiry is

unnecessary, and the state crime cannot be a predicate offense. *See Salmoran v. Attorney General*, 909 F.3d 73, 81 (3d Cir. 2018) ("where the elements of the crime of conviction are not the same as the elements of the generic federal offense . . . we believe the realistic probability language . . . is simply not meant to apply.") (internal quotation marks omitted) (quoting *Singh v. Attorney General*, 839 F.3d 273, 286 n.10 (3d Cir. 2012)); *United States v. Myers,* 56 F.4th 595, 599 (8th Cir. 2022) ("Because the text of the Missouri drug schedule plainly criminalized [broader conduct], our inquiry ends there.").

### III.   DISCUSSION

Defendant argues that the law of his state drug convictions differs from its federal counterpart in two key respects.  Namely, federal law excludes the medically-used cocaine analogue [123I]Ioflupane and non-optical isomers of heroin from its definition of controlled substances, whereas Pennsylvania law contains no such exclusions.  We agree with defendant that, applying the categorical approach,[1] the relative breadth of Pennsylvania law renders his state convictions insufficient as predicate offenses under the ACCA.  Moreover, because the state and federal drug definitions are facially and explicitly different, there is no need to apply the realistic probability test.  Accordingly, defendant need not show that Pennsylvania would

---

[1] In the Order overruling Defendant's first objection to sentencing, we held that the categorical approach applies here.  Because 35 Pa. Cons. Stat. § 780-113(a)(30) is divisible, we would typically apply the modified categorical approach and look at the Shepard documents to determine the specific crime with which Defendant was charged.  *United States v. Brasby,* No. 21-1537, 2023 WL 2175740, at *4 (3d Cir. Feb. 23, 2023) (explaining that under the modified categorical approach, "the sentencing court looks beyond the statute of conviction to a restricted set of documents—such as the charging document, plea agreement, and transcript of the plea colloquy—to identify the specific statutory offense that provided the basis for the prior conviction," then "compares those elements to the elements of the generic offense using the formal categorical approach.") (citations and internal quotations omitted).  However, the Shepard documents fail to specify the particular basis for Defendant's conviction under the statute.  (*See* Shepard Documents (on file with the court).)  Therefore, we applied and will continue to apply the categorical approach.

actually prosecute someone for possession of [123I]Ioflupane and non-optical isomers of heroin, and we will sustain his objections.

### A.     Cocaine and [123I]Ioflupane

Defendant argues that the CSA's exclusion of the cocaine analogue [123I]Ioflupane renders it narrower on its face than its state counterpart.  We agree.

In determining whether Pennsylvania law is broader than the federal law, we examine the elements of the state crime at the time of Defendant's state conviction and the elements of the federal crime at the time Defendant committed the federal offense.  *McNeil v. United States,* 563 U.S. 816, 820 (2011).  Pennsylvania's definition of cocaine at the time of Defendant's conviction on August 24, 2014, was as follows:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but shall not include decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine.

35 Pa. Stat. § 780-104(2)(i)(4).

The CSA, on the other hand, defines cocaine as:

> Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include:
>
> (i) Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or
>
> (ii) [123I]Ioflupane

21 C.F.R. § 1308.12(b)(4).  The provision excluding [123I]Ioflupane was added in 2015, well before defendant committed his federal offense on July 24, 2018.

An element-by-element analysis of both the Pennsylvania and Federal statutes makes it clear that the former is facially broader; the CSA explicitly excludes [123I]Ioflupane from the purview of federal drug crimes, while Pennsylvania makes no such exception. In other words, under the law as written, someone could be prosecuted for possessing or distributing [123I]Ioflupane under Pennsylvania law but not under federal law. Indeed, many courts, both in this and other Circuits, have recognized the overbreadth of the Pennsylvania law and similar state statutes when compared to the CSA. *See, e.g., United States v. Jackson,* 36 F.4th 1294 (11th Cir. 2022) (citations omitted) ("Because ioflupane was not a 'controlled substance' under federal law when Jackson committed his § 922(g) firearm-possession offense, his state offenses did not 'necessarily entail' the conduct set out in ACCA's 'serious drug offense' definition. As a result, Jackson's cocaine-related prior convictions do not qualify under ACCA as 'serious drug offense[s].'") (vacated on other grounds); *United States v. Holliday*, 853 F. App'x 53, 54 (9th Cir. 2021) ("The Montana schedules are also overbroad when compared with the federal regulatory drug schedules. The federal regulatory schedules were recently amended to specifically exclude 'ioflupane' from the list of cocaine-related substances . . . The Montana schedules, on the other hand, include 'cocaine and ecgonine and their . . . derivatives' without any exception for ioflupane."); *United States v Gott,* No. 20-108, 2023 WL 362388, at *7 (M.D. Pa. Jan. 23, 2023) ("The court finds that based on the categorical mismatch between 'narcotic drug' under N.Y.P.L. § 220.39(1) and 'controlled substance' under the CSA, Gott's underlying New York state court conviction cannot qualify as a 'serious drug felony' for purposes of a sentence enhancement"); *United States v. Baskerville,* No. 19-33, 2022 WL 4536126, at *3 (M.D. Pa. Sept. 28, 2022) ("Conducting an element by element comparison, it is quite clear that the Pennsylvania definition of cocaine was broader than the federal definition at the time

Baskerville committed the § 922(g) offense . . . because Pennsylvania did not exclude ioflupane from the definition of cocaine . . . Pennsylvania law criminalizes the trafficking of ioflupane, while the federal law does not."); *United States v. Scott*, No. 18-547, 2021 WL 6805797 (D.N.J. Dec. 6, 2021) ("Unlike the federal definition [of a controlled substance as used by the sentencing guidelines] . . . New Jersey law does not exclude Ioflupane from New Jersey drug schedules. Thus, the New Jersey statute sweeps broader than what the Guidelines contemplate as a controlled substance offense, and Scott's state conviction does not qualify as a predicate offense under section 2K2.1(a)(2) of the Guidelines.") (citation omitted).

The Government's arguments do not overcome the weight of this authority and the plain language of the relevant statutes. Primarily, the Government claims that Defendant is required to show a realistic probability that Pennsylvania would actually prosecute someone for possession of [123I]Ioflupane. (Gov. Reply, at 2-3). However, this is not a requirement where state law is broader on its face than the CSA. As the Third Circuit explained in *Salmoran*, "where the elements of the crime of conviction are not the same as the elements of the generic federal offense . . . we believe the realistic probability language . . . is simply not meant to apply." 909 F.3d at 73 (internal quotation marks omitted) (quoting *Singh v. Attorney General,* 839 F.3d at 286 n.10). *See United States v. Miller,* 480 F. Supp. 3d 614, 623 (M.D. Pa. 2020) ("the Third Circuit has rejected the 'realistic probability' inquiry when the elements of the prior state conviction plainly do not match the corresponding federal offense. Our court of appeals does not require defendants to identify cases of actual prosecution when the state statute 'expressly authorizes the state government to enforce broader conduct.'") (citing *Salmoran,* 909 F.3d at 81-82; *Singh*, 839 F.3d at 286 & n.10). *See also Myers,* 56 F.4th at 599 ("Because the text of the Missouri drug schedule plainly criminalized [broader conduct], our inquiry ends there.");

*Holliday*, 853 Fed.App'x. at 55 ("The government contends that Holliday failed to show a 'realistic probability' that a person could be convicted for selling ioflupane under Montana law. Not so . . . Holliday's prior statute of conviction is overbroad on its face.") (citations omitted).

The Government's reliance on *Gonzales v. Duenas Alvaraz,* 549 U.S. 183 (2007) and *United States v. Glass*, 904 F.3d 319 (3d Cir. 2018) to support its realistic probability argument is misplaced. In both cases, the question was whether a certain type of broader criminal conduct was *implied* by the language of the state law. In *Duenas-Alvarez*, the Supreme Court considered the 9th Circuit's ruling that "the California statutory phrase '[who] is a party or an accessory . . . or an accomplice' would permit conviction 'for aiding and abetting a theft,'" which in turn could theoretically be used to criminalize, more broadly than the relevant federal statute, one who aided or abetted a theft "without taking or controlling property." 549 U.S. at 188. However, because this broad application of the state law was not plain on its face, but the product of "legal imagination," the Court required Defendant to show that there was a realistic probability that it would be applied in such a way. *Id.* at 193.

Likewise, in *Glass*, the defendant argued "that a mere offer to sell drugs is *impliedly* included in § 790-113(a)(3)" because the Pennsylvania law criminalizes "an attempted transfer" of drugs. 904 F.3d at 322 (emphasis added). The Third Circuit therefore required a showing of a realistic probability that Pennsylvania would actually prosecute a mere offer to sell drugs, because such a crime could only be implied into the statute through legal imagination. Both *Glass* and *Duenas-Alvarez* are distinct from this case, where Defendant has identified a concrete facial difference between state and federal law, rather than attempting to stretch the definition of state law through creative legal analysis. As another court in our circuit explained:

> While [*Glass*] referenced the lack of evidence indicating a realistic probability of prosecution for a mere offer to sell drugs, there is a clear difference between the

7

> issue addressed in *Glass* and the issue here. In *Glass*, the plain language of the statute did not criminalize an offer to sell, but the defendant argued that criminalization of such conduct was implied. Here, the plain language of the Pennsylvania statute criminalizes ioflupane and the federal counterpart does not. Simply put, there is no implied element in this case that requires legal imagination to examine, and thus no need to utilize the realistic probability analysis.

*Baskerville,* 2022 WL 4536126, at *4. Accordingly, we find that defendant does not need to identify a realistic probability that Pennsylvania would prosecute someone for possession or distribution of [123I]Ioflupane. The fact that Pennsylvania's definition of cocaine is facially broader than the definition of cocaine in the CSA ends the inquiry.

      B.      **Heroin and its Non-Optical Isomers**

Defendant points to a similar difference between the state and federal definitions of heroin. Specifically, he notes that Pennsylvania criminalizes possession of all isomers of heroin, whereas the CSA only criminalizes possession of the optical isomer of heroin. For similar reasons, we sustain his objection.

The CSA defines heroin in schedule I(b) as follows: "Unless specifically excepted or unless listed in another schedule, any of the following opium derivatives, their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation: . . . (10) Heroin." 21 U.S.C. § 812(c). In 1984, the CSA was amended to define "isomer," for the purposes of schedule I(b), as "the optical isomer." 21 U.S.C. § 802(14).

On the other hand, Pennsylvania's statute defines heroin as "[a]ny of the following opium derivatives, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of such salts, isomers and salts of isomers is possible within the specific chemical designation . . . (10) Heroin." 35 Pa. Stat. § 780-104(1)(ii). Pennsylvania's statute does not specify that it includes *only* the optical isomer.

8

As with cocaine, it is clear on the face of these statutes that Pennsylvania's is broader; someone could be charged with possessing a non-optical isomer of heroin under Pennsylvania law but not under federal law. While caselaw on non-optical isomers of heroin is not as developed as that on [123I]Ioflupane, the same reasoning applies. Moreover, the courts in this circuit that have considered the question have found that Pennsylvania's definition of heroin is unquestionably broader than that found in the CSA. *See United States v. Espy*, No. 18-332, 2022 WL 247833, at *3 (W.D. Pa. Jan. 27, 2022) ("The federal definition of heroin includes heroin and its optical isomers only. Pennsylvania's definition of heroin, however, includes heroin and its salts, isomers, and salts of isomers; which necessarily includes non-optical isomers not covered under federal law. Therefore, on its face, the Pennsylvania definition of heroin covers a wider range of conduct than the federal definition."); *United States v. Ward*, No. 18-148, 2021 WL 5604997, at *1 (W.D. Pa. Nov. 30, 2021) ("Because the plain language of Pennsylvania's definition covers a larger swath of conduct than its federal counterpart, i.e., all isomers of heroin as opposed to only its optical isomer, Ward's statute of conviction is categorically broader than the federal definition.").[2]

---

[2] The Government's reliance on the Third Circuit's decision in *Henderson* to support the opposite conclusion is misplaced. It is true that the Court held that Henderson's conviction under state law for possession of heroin was a predicate offense under the ACCA. 841 F.3d at 631. However, the issue in *Henderson* was not whether Pennsylvania's drug schedule was facially broader than the CSA, but whether the specific drug Henderson possessed was an "element" of his conviction such that the state statute was divisible and the court could "review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction . . . ." 841 F.3d at 632. At most, it could be said that the *Henderson* Court assumed that Henderson's prior state heroin conviction was a predicate offense under the ACCA, but the Court was not presented with the challenge before us in this case. We do not read *Henderson* as ruling that Pennsylvania's definition of heroin is not categorically broader than the CSA's definition, and it did not prevent the courts in *Espy* and *Ward* from making such a finding.

However, while we agree with *Espy* and *Ward* that Pennsylvania's definition of heroin covers a wider range of conduct than the CSA, we depart from these cases in our holding that defendant need not show a realistic probability of prosecution. In *Espy,* the court remanded for a hearing on whether there was such a realistic probability, relying on the unpublished Third Circuit case of *United States v. Singh*, 783 F.App'x 191 (3d Cir. 2019),³ in which the Court held that "Singh must also show a realistic probability that New York would prosecute someone . . . for possession with intent to sell chorionic gonadotropin," a drug not criminalized under the CSA. *Id.* at 195.

*Singh*, and by extension *Espy*, are not applicable here. The Third Circuit in *Singh* noted that, in addition to criminalizing chorionic gonadotropin, the New York statute was broader than the CSA because "a prosecutor is not required to prove which drug a person alleged to have violated the first provision of § 220.06 possessed, as the substance is a means of commission, rather than an element of the crime." 783 F. App'x. at 195. This differs from Pennsylvania law, where "particular controlled substances are . . . distinct elements of the crime; not means of committing the crime." *Henderson,* 841 F.3d at 2016. It is therefore not clear that *Singh's* reasoning applies directly to prior convictions under the Pennsylvania statute, where *elements* of the state drug offense are facially different than elements of the federal drug offense.⁴ As the

---

³ This case is unrelated to *Singh v. Attorney General,* 839 F.3d 273 (3d Cir. 2012), cited elsewhere through this opinion. We use the full case name of *Singh v. Attorney General* to distinguish these cases.

⁴ This is not a semantic difference, as whether something is an element or means materially effects the application of the modified categorical approach. As the Third Circuit explained in *Henderson*:

> In *Mathis* [*v. United States*, 579 U.S. 500 (2016)], the Supreme Court reiterated that we may use the categorical approach to analyze a statute if it "lists multiple elements disjunctively," but may not do so if a statute "enumerates various factual means of committing a single element." Accordingly, the Court explained that

Third Circuit has made clear, "where the *elements* of the crime of conviction are not the same as the *elements* of the generic federal offense . . . we believe the realistic probability language . . . is simply not meant to apply." *Salmoran,* 909 F.3d at 73 (emphasis added) (internal quotation marks omitted) (quoting *Singh v. Attorney General.,* 839 F.3d at 286 n.10). Any other reading of *Singh* would render it at odds with the prior and published Third Circuit cases of *Salmoran* and *Singh v. Attorney General*, and we therefore do not find it controlling outside of the context of New York drug laws.

For similar reasons, we are not convinced by the portion of the court's decision in *Ward* requiring defendant to show a realistic probability of prosecution. In *Ward*, the Western District court recognized that Pennsylvania's definition of heroin was overbroad compared to the CSA, but nevertheless found *Salmoran* "inapposite" and required defendant to meet the realistic probability inquiry on the reasoning that a non-optical isomer of heroin is not an "element" of the Pennsylvania offense. *Ward,* 2021 WL 5604997, at *2. However, as explained above, this contradicts the Third Circuit's holding in *Henderson* that the different drugs listed in 35 Pa. Stat. § 780-104 are elements of any criminal statute that cross references this exhaustive list. 841 F.3d at 630-31.

---

"[t]he first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." "If they are elements," the Court explained, we should "review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime." "[I]f instead they are means," however, the Supreme Court explained that we have "no call to decide which of the statutory alternatives was at issue in the earlier prosecution."

841 F.3d at 628 (citations omitted).

11

Rather than adopt the reasoning in *Espy* and *Ward* regarding the realistic probability inquiry, we will instead follow the weight of the caselaw described in the preceding section, concerning cocaine and [123I]Ioflupane, holding that defendant need not prove a realistic probability of prosecution where the elements of the statutes are facially different. The applicability of those cases to heroin and non-optical isomer heroin is obvious, even more so because the same reasoning has been extended to the context of marijuana and hemp. *See Miller*, 480 F. Supp. 3d at 623 ("Our court of appeals does not require defendants to identify cases of actual prosecution when the state statute 'expressly authorizes the state government to enforce broader conduct,'" such as where "Pennsylvania criminalizes possession with intent to deliver hemp, that is, Cannabis sativa L. with a THC concentration at or below 0.3 percent; the federal CSA does not.").

The Government also argues that, even if Pennsylvania's definition of heroin differs from the CSA, non-optical isomer heroin is still prohibited on the federal level as a "controlled substance analogue." (Gov. Resp. at 20) (citing 21 U.S.C. § 813.) A "controlled substance analogue" is treated as an ordinary controlled substance under schedule I or II where it has a similar chemical structure and causes similar effects to the nervous system. 21 U.S.C. § 802(32)(A).

We reject this argument for three reasons. First, the court is not equipped to make scientific conclusions about the chemical structure of non-optical isomer heroin or [123I]Ioflupane or their effects on the user's nervous system based only on the Government's brief discussion of the controlled substance analogue statute in its response. Second, one of the requirements of a controlled substance analogue is that its user "represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially

similar to . . . a controlled substance in schedule I or II." 21 U.S.C. § 802(32)(A)(iii).  Therefore, whether something is a controlled substance analogue depends on a case-by-case determination of its subjective intended effect, which obviously cannot be applied broadly to render non-optical isomer heroin a federally controlled substance in every case, like it is under Pennsylvania law. Finally, we are not convinced that the controlled substance analogue act is intended to apply to substances, like non-optical isomer heroin, that have already been explicitly excluded from the federal drug schedule.  This would lead to an absurd result, where Congress chose to define only optical isomer heroin as a controlled substance under 21 U.S.C. § 802(14), only to turn around and include non-optical isomer heroin under the controlled substance analogue act.  This would render the exceptions to the heroin definition effectively meaningless.  *See Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs.*, 794 F.3d 383, 392 (3d Cir. 2015) ("One of our 'most basic interpretive canons' is that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (quoting *Corley v. United States*, 556 U.S. 303, 314, (2009)).

This leaves only the Government's argument that non-optical isomer heroin is not a "narcotic drug" under Pennsylvania law, meaning that its possession would not necessarily carry a maximum term of imprisonment of ten years or more, which is required for a "serious drug offense" under the ACCA.  18 U.S.C. § 924(e)(2)(ii).  The Government contends that "Heroin and its optical isomer are clearly narcotic drugs," but argues that Defendant has not identified "any non-optical isomer of heroin that has a narcotic effect such that it would be subject to the enhanced penalty in the state statute."  (Gov. Resp. at 22.)  The Government's argument fails because it "has the burden at sentencing to establish the defendant's armed career criminal status." *United States v. Harris*, 205 F. Supp. 3d 651, 662 n.10 (M.D. Pa. 2016) (citing *United*

*States v. Howard*, 599 F.3d 269, 271-72 (3d. Cir. 2010). The Government has not provided us with any evidence to determine that non-optical isomer heroin is not a narcotic even though, as it readily admits, the optical isomer of heroin is. We decline to hold that a conviction for possessing heroin under Pennsylvania law is a predicate offense under the ACCA based on pure speculation that non-optical isomer heroin may not be a narcotic.

## IV. CONCLUSION

Based on the plain language of Pennsylvania's drug schedule and the CSA, as well as our application of the categorical approach, we are constrained to rule that Defendant's prior convictions for possession of heroin and cocaine cannot be predicate offenses under the ACCA. The Government argues that this produces the absurd result that no conviction for the distribution of cocaine or heroin in Pennsylvania qualifies as a serious drug offense under the ACCA. We are sympathetic to this point of view. However, we cannot depart from the recent decisions in our circuit holding that Pennsylvania's definitions of heroin and cocaine are categorically broader than their federal counterparts, or from Third Circuit precedent holding that defendants are not required to show a realistic probability of prosecution in the face of this overbreadth. In the well-reasoned words of Judge Shipp:

> The Court recognizes that its decision leads to the outcome that prior felony convictions involving crack cocaine in New Jersey cannot qualify as predicate controlled substance offenses. In particular, the Government warns that Scott's approach requires courts to engage in potential atomic-level comparisons of drug isomers. The Court finds, however, that such comparison is what the categorical approach countenances.

*Scott*, 2021 WL 6805797, at *11 (citations omitted). We are no less constrained by the law in this case.

For the foregoing reasons, Defendant's Second Supplemental Objection To Application Of The ACCA Enhancement is sustained.  An appropriate order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*

**R. BARCLAY SURRICK, J.**